# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | No. 04 CR 1045 |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| GEORGE HOOK | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff George Hook is a supervised releasee who seeks a permanent injunction and a protective order barring the government from taking a sample of his DNA pursuant to the Justice for All Act of 2004 (Public Law 108-405, October 20, 2004) ("2004 DNA Act") and the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. §§ 14135–14135e (2001 Supp.) ("2000 DNA Act"), which require that such samples be collected from felony offenders for inclusion in the Combined DNA Index System ("CODIS"), a national DNA database linking DNA evidence in a nationwide computer network. Presently before the court is Hook's Verified Petition for Declaration of Constitutional Rights, to Enjoin Violations of Terms of Supervised Release by USA, Termination of Supervised Release, Therefor and Protection of Supervised Releasee from the Unconstitutional and Otherwise Unlawful Behavior of the USA ("Verified Petition"). Also before the court are U.S. Probation Officer Tony S. Morton's Request for a Hearing for a Rule to Show Cause Why Supervised Release Should Not Be Revoked and Hook's Objections to Special Report and Motion to Quash Special Report and Terminate Supervised Release. The court has jurisdiction pursuant to 18 U.S.C. § 3231. See 18 U.S.C. § 3583(e)(3) (court's authority to revoke supervised release under certain circumstances). For the reasons that follow, Hook's

verified petition is denied, Morton's request for a hearing is denied, and Hook's motion to quash and terminate supervise release is denied.

## BACKGROUND

On May 26, 2004, Hook was sentenced to 84 months of imprisonment on multiple wire fraud and money laundering convictions and 64 months on a theft from an employee benefit plan conviction, all to be served concurrently. Hook was ordered to serve a three-year term of supervised release upon release from imprisonment. Hook's three-year period of supervised release commenced on July 26, 2004.

After serving approximately fifteen months of supervised release, the United States probation office scheduled Hook for a DNA collection on October 27, 2005, pursuant to the 2000 and 2004 DNA Acts. Hook refused to submit to DNA collection pending resolution of his verified petition. Hook maintains that his counsel and Morton and Morton's Supervising U.S. Probation Officer agreed that Hook was not required to appear for DNA testing until Hook's verified petition was resolved by the court. Consequently, Hook contends, he did not appear at the October 27, 2005 appointment. Nevertheless, on November 21, 2005 Morton filed a Request for a Hearing for a Rule to Show Cause Why Supervised Release Should Not Be Revoked based on Hook's alleged non-compliance with the order to submit a blood sample on October 27, 2005. Hook filed in response his Objections to Special Report and Motion to Quash Special Report and Terminate Supervised Release, as well as a Supplement in Support of his Verified Petition.

The DNA Identification Act of 1994, part of the Violent Crime Control and Law Enforcement Act of 1994, authorized the Federal Bureau of Investigation to create an index of DNA samples from persons convicted of crimes. DNA Identification Act of 1994, § 210304(a),

2

Pub. Law No. 103-332, 108 Stat. 1796. In December 2000, the United States Congress enacted the 2000 DNA Act, which required United States probation offices to collect a DNA sample from each individual being supervised while on probation, parole or supervised release who had been convicted of a qualifying federal offense. DNA Backlog Elimination Act of 2000, § 3, Pub. L. No. 106-546, 114 Stat. 2726 (2000) (codified at 42 U.S.C. § 14135a). "Qualifying federal offenses" were limited to violent crimes, including homicides, sex offenses, kidnapping, robbery and conspiracies to commit these offenses. 42 U.S.C. 14135a(d). In October 2004, the United States Congress enacted the 2004 DNA Act, which amended the 2000 DNA Act by expanding the list of qualifying federal offenses for collection of DNA samples to include any felony, any offense under chapter 109A of Title 18, any crime of violence, and any attempt or conspiracy to commit any of those offenses. Justice For All Act of 2004, § 203, Pub. L. No. 108-405, 118 Stat. 2260 (codified as 42 U.S.C. 14135a(d).

## DISCUSSION

### A. Hook's Fourth Amendment Claim

Hook first contends that the 2004 DNA Act violates the Fourth Amendment's prohibition against unreasonable searches and seizures because it compels extraction of blood for a DNA sample in the absence of individualized suspicion or probable cause of any criminal wrongdoing and "has not been authorized by [a] judicially supervised process." Hook's Verified Petition at 5.

Neither party disputes that the statutorily required extraction of blood for DNA collection forces Hook to submit to a "search" without probable cause or reasonable suspicion. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616-617, 109 S.Ct. 1402, 1412-1413, 103 L.Ed.2d 639 (1989) (blood tests, breathalyser tests, and the taking of urine constitute searches). As a

3

consequence, the only Fourth Amendment issue is whether the DNA collection procedures pursuant to the 2000 DNA Act constitute a reasonable search under the Fourth Amendment.

Courts have utilized two different approaches to address the constitutionality of compelled blood extractions from convicted felons pursuant to the 2000 and 2004 DNA Acts. The first approach employs a reasonableness standard and examines, whether, based upon the totality of the circumstances, the search and seizure are reasonable given the governmental interest involved, the nature of the intrusion, the privacy expectations of the object of the search and, to some extent, the manner in which the search is carried out. *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). The Fourth, Fifth, and Ninth Circuit Courts of Appeals have utilized this reasonableness standard. *United States v. Sczubelek*, 402 F.3d 175, 184 (3rd Cir. 2005).

The Seventh, Second and Tenth Circuits, however, have applied the "special needs" exception to the warrant and probable cause requirements of the Fourth Amendment. *See Roe v. Marcotte*, 193 F.3d 72 (2d Cir. 1999) (upholding Connecticut DNA statute); *Green v. Berge*, 354 F.3d 675 (7th Cir. 2004) (upholding Wisconsin DNA statute); *United States v. Kimler*, 335 F.3d 1132 (10th Cir. 2003). This approach examines whether special needs exist sufficient to justify searches and seizures conducted for important non-law enforcement purposes in situations where complying with the warrant and probable cause requirements would be unfeasible.

Since there is no constitutionally relevant distinction between the Wisconsin statute at issue in *Green* and the federal statute at issue in this case, it is appropriate to examine the

4

constitutionality of the 2004 DNA Act under the special needs approach.[1]

Whether the special needs exception applies depends upon the purpose of the law in issue. If the primary purpose is ordinary law enforcement, the special needs exception does not apply and the search cannot be upheld under the doctrine. *Indianapolis v. Edmond*, 531 U.S. 32, 44, 48, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). Once a non-ordinary law enforcement purpose is identified, however, the court conducts a reasonableness test balancing the individual's privacy interests against the government's special needs. *Board of Education of Independent School District No. 92 v. Earls*, 536 U.S. 822, 829, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002); *Ferguson v. City of Charleston*, 532 U.S. 67, 81, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001)

The Seventh Circuit's decision in *Green* is again dispositive. In *Green*, the Seventh Circuit found that the nonconsensual suspicionless search authorized by the Wisconsin DNA collection statute was immunized under the special needs exception because the primary purpose of the statute was not ordinary law enforcement. *Green*, 354 F.3d at 678. The Wisconsin statute and the 2004 DNA Act were enacted for the same purpose. Both statutes establish a DNA database with the ultimate goal of solving past and future criminal investigations, exonerating the innocent and deterring recidivism. Thus, the purpose of the 2004 DNA Act goes beyond the ordinary law enforcement need. *Id.*; *see also Kimler*, 335 F.3d at 1146; *Sczubelek*, 402 F.3d at 175.

---

[1] Hook attempts to distinguish *Green* by stating that "Unlike all federal statutes heretofore, this Justice for All Act of 2004 purports to apply to persons who have not been convicted and are in no way even suspected of crimes of violence or sex, *i.e.* crimes involving anything that would make DNA relevant." Hook's statement, however, is factually incorrect. The Wisconsin statute at issue in *Green*, while originally applicable only to prisoners convicted of certain offenses, was amended in 1999, five years before the decision in *Green*, to require all persons convicted of felonies in Wisconsin to provide DNA samples. Thus, the Seventh Circuit's finding that the special needs exception applied to the Wisconsin statute is directly relevant to this case.

5

Having determined that the special needs doctrine applies, Hook's privacy interests must be assessed against the government's special need in order to determine whether the search is reasonable. Persons on conditional release, including parole, probation and supervised release, comprise a separate category of persons for purposes of the Fourth Amendment.[2] *See Green*, 354 F.3d at 679 (Easterbrook, J., concurring); *see also Jones v. Murray*, 962 F.2d 302, 307, n. 2 (4th Cir. 1992). Individuals on supervised release enjoy a diminished expectation of privacy.[3] *Griffin v. Wisconsin*, 483 U.S. at 874 ("To a greater or lesser degree, it is always true of probationers ... that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions."). In particular, a supervised releasee has no expectation of privacy in proof of his identity. *Sczubelek*, 402 F.3d at 184 ("Individuals on supervised release cannot reasonably expect to keep information bearing on their physical identity from government records."); *Padgett v. Donald*, 401 F.3d 1273, 1279, 1280 (11th Cir. 2005) (finding that prisoners have a reduced expectation of privacy in their identities).

Another factor in the balancing test involves the nature of the search. The intrusion of extracting a blood sample is minimal. *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (blood tests are "commonplace in these days of periodic physical

---

[2]Hook argues that individuals on supervised release should not be "lumped" together with individuals on parole or probation as a category of persons who have a diminished expectation of privacy. Hook, however, cites no authority for this proposition. Moreover, there is considerable authority, including several Supreme Court cases, supporting Judge Easterbrook's statement that individuals on supervised release have reduced privacy interests. *See Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *see also National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 679, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

[3] The fact that giving a DNA sample was not originally an express condition of Hook's supervised release does not alter his diminished expectation of privacy as a supervised releasee. *Sczubelek*, 402 F.3d at 185 n. 4.

6

examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain."). Thus, balanced against the government interest is a minimal intrusion and a diminished expectation of privacy.

In this case, the government has not identified the interests which are served by the collection of DNA from convicted felons pursuant to the 2004 DNA Act. Nevertheless, the legislative history and cases addressing the constitutionality of the 2000 DNA Act, which the 2004 DNA Act amended to expand the list of qualifying federal offenses, reveal several important government interests served by collection of DNA from convicted felons. First, DNA collection enables state and federal law enforcement to match DNA samples with crime scenes or other evidence in an effort to solve past and future cases.[4] *United States v. Reynard*, 220 F.Supp.2d 1142, 1146 (S.D. Cal. 2002). Second, DNA collection promotes accuracy in the criminal justice system since positive identification would likely exonerate those wrongly accused or convicted of a crime. 2000 WL 1784925 at 5; *see Rise v. State of Oregon*, 59 F.3d 1556, 1561 (noting "overwhelming public interest in prosecuting crimes accurately.") (emphasis omitted). Finally, the DNA Act was enacted to reduce recidivism by incarcerating offenders

---

[4]Hook argues that the government has no interest in his DNA because his picture and fingerprints are sufficient to resolve any dispute now or in the future as to his identity. "It is a well recognized aspect of criminal conduct that the perpetrator will take unusual steps to conceal not only his conduct, but also his identity." *Sczubelek*, 402 F.3d at 185. The mere fact that Hook refrained from such conduct in this instance is an insufficient guarantee that he would not attempt to conceal his identity if he engaged in criminal conduct in the future. And while traditional forms of identification may prove sufficient to match suspects with criminal conduct in many cases, it is unquestionable that DNA provides potentially greater precision because it is not susceptible to manipulation. Accordingly, the 2004 DNA Act as applied to Hook continues to serve the government's interests in accuracy in the criminal justice system and deterring recidivists.

before they have the opportunity to repeat their crimes in the future.[5] 2000 WL 1784925.

In light of the substantial benefit to society resulting from DNA collection in comparison to the minimal intrusion of blood collection and the diminished privacy interests held by a supervised releasee, the DNA collection authorized by the 2004 DNA Act is reasonable. *See Green*, 354 F.3d at 679; *see also Sczubelek*, 402 F.3d at 184; *United States v. Rodriguez-Benavides*, 148 Fed.Appx. 813, 817-818 (11th Cir. 2005) (upholding the 2000 and 2004 DNA Acts against a Fourth Amendment challenge).

## B. Hook's Fifth Amendment Claims

Hook next argues that the 2004 DNA Act violates the Fifth Amendment privilege against self-incrimination. But the Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 764-765, 86 S.Ct.1826, 16 L.Ed.2d 908 (1966) held that blood test evidence, although potentially incriminating, is neither testimony nor evidence relating to any communicative act. Thus, the Supreme Court held that the involuntary seizure of a blood sample does not implicate the Fifth Amendment privilege. *Id.*; *see United States v. Pipito*, 861 F.2d 1006, 1009 (7th Cir. 1987) ("[T]he Fifth Amendment privilege against compelled self-incrimination is a testimonial privilege and ... the taking of blood samples or fingerprints is not equivalent to the taking of communicative testimonial evidence."); *see also Reynard*, 220 F.Supp.2d at 1174 (citing *Belgarde v. Montana*, 123 F.3d 1210, 1214 (9th Cir. 1997) (blood test results from non-consensual blood test, which ultimately lead to defendant's conviction, are not testimonial or

---

[5] Hook argues that the government has no interest in his DNA because there is little chance that he would ever engage in criminal conduct in which DNA evidence would be useful. But Hook's argument applies to nearly all individuals subject to the compelled extraction. Indeed, DNA samples "merely offer the potential that some very small percentage may be relevant to solving a crime that in all likelihood has not even been committed at the time of the search." *Nicholas v. Goord*, 2003 WL 256774*13 (S.D.N.Y. 2003).

communicative evidence implicating Fifth Amendment concerns).

Hook additionally claims that the 2004 DNA violates his rights under the Due Process Clause of the Fifth Amendment. The Supreme Court, however, has held that the extraction of blood from an individual in a simple, medically acceptable manner, despite an individual's lack of opportunity to object to the procedure, does not offend the ordinary sense of justice provided by the Due Process Clause. *See Schmerber*, 384 U.S. at 759-760. Accordingly, the extraction of blood for purposes of the 2004 DNA Act, whether voluntary or compelled, does not violate Hook's right to Due Process. *See Rise*, 59 F.3d 1556; *Boling v. Romer*, 101 F.3d 1336 (10th Cir. 1996); *Groceman v. United States Dep't of Justice*, 2002 WL 1398559 (N.D.Tex. 2002).

## C. Hook's Eighth Amendment Claim

Hook also argues that the DNA Acts' authorization of compelled blood extractions violates the Eighth Amendment's prohibition against "cruel and unusual punishment." The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" as well as "barbarous punishments." *Rhodes v. Chapman*, 452 U.S. 337, 345-346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (internal quotations marks and citations omitted). Application of the Eighth Amendment must be based on "the evolving standards of decency that mark the progress of a maturing society." *Id.* (citations omitted). The Supreme Court has held that blood tests "would not be considered offensive even by the most delicate." *Yusov v. Martinez*, 2000 WL 1593387*5 (S.D.N.Y. 2000) (quoting *Briethaupt v. Abram*, 352 U.S. 432, 436, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). Thus, the compelled extraction of a blood sample by the DNA Acts does not violate the Eighth Amendment. *See Id.* (upholding a New York DNA statute similar to the DNA Acts at issue in this case against an Eighth Amendment challenge); *see also Kruger v.*

*Erickson*, 875 F.Supp. 583, 588-589 (D.Minn. 1995) (upholding a Minnesota DNA statute similar to the 2000 and 2004 DNA Acts against an Eighth Amendment challenge).

D.   **Hook's Ninth Amendment Claim**

Hook next contends that the Ninth Amendment guarantees a right to his blood. Hook, however, cites no authority for this proposition. The Supreme Court has never held that an individual, much less a supervised releasee, has an unconditional right to his blood. Instead, the Supreme Court has repeatedly affirmed the constitutionality of certain blood extractions. *See Schmerber*, 384 U.S. at 771. Whatever interest Hook has in his blood is diminished by his status as a supervised releasee and is outweighed by the government's interest in accuracy in the criminal justice system, deterring recidivism, and protecting the innocent. Accordingly, the DNA Acts do not violate the Ninth Amendment.

E.   **Hook's Tenth Amendment Claim**

Hook also argues that the 2004 DNA Act violates the Tenth Amendment which provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. Specifically, Hook maintains that the 2004 DNA Act's expansion of the qualifying federal offenses to include any felony exceeds the power delegated to the federal government under Article I, Section 8. Hook again fails to cite any authority in support of his argument. Nevertheless, the Tenth Amendment does not bar Congress from enacting criminal statutes. *United States v. Geiger*, 263 F.3d 1034, 1041 (7th Cir. 2001). The Supremacy Clause allows Congress to legislate within the confines of its constitutional grant of authority under Article II, Section 9. *Id.* In this case, the 2004 DNA Act was enacted in accordance with the Commerce

Clause of the United States Constitution and thus, is not a violation of the Tenth Amendment. *Reynard*, 220 F.Supp.2d at 1173-1174 (upholding the 2000 DNA Act against a Commerce Clause challenge).

## F. Hook's Thirteenth Amendment Claim

Hook contends that forced blood extraction by means other than judicial power violates the Thirteenth Amendment's prohibition against slavery. Hook again fails to cite any legal support for his position. Hook's argument is in effect a claim of lack of due process. As discussed in connection with Hook's Fifth Amendment Due Process Clause argument, forced blood extraction does not implicate the Due Process Clause. *See Schmerber*, 384 U.S. at 759-760. As such, compelled blood extraction does not violate the Thirteenth Amendment.

## G. Hook's Fourteenth Amendment Claim

Hook argues that the 2004 DNA Act violates the Fourteenth Amendment because it deprives a supervised releasee equal protection of the laws. Specifically, Hook contends that individuals on conditional release are treated differently than individuals who have not been convicted of a felony. Convicted felons are not a constitutionally recognized suspect class. *Baer v. City of Wauwastosa*, 716 F.2d 1117, 1125-1126 (7th Cir. 1983). Therefore, only irrational discrimination against them would violate the equal protection clause. Requiring convicted felons to submit a blood sample is rationally related to the government's legitimate interests in improving the accuracy of the criminal justice system and deterring recidivism. Accordingly, the 2004 DNA Act does not violate the Fourteenth Amendment.

## H. Hook's Ex Post Facto Clause Claim

Hook next argues that the 2004 DNA Act violates the *Ex Post Facto* clause because it operates retroactively and increases the punishment for his conviction beyond that available at the time his offenses were committed. The Government responds that the 2004 DNA Act is not an *Ex Post Facto* violation because collection of a DNA sample is not penal in nature and failure to comply is a misdemeanor under the collection statute and the original terms of supervised release prohibit commission of additional offenses while on supervised release.

To demonstrate an *Ex Post Facto* violation, a defendant must show "that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States*, 529 U.S. 694, 699, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). While the Supreme Court has not considered a claim that a DNA collection statute constitutes retroactive punishment forbidden by the *Ex Post Facto* clause, the framework for analyzing such a claim is well established. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164. The court must first ascertain whether the legislature meant the statute to establish civil proceedings. *Id.* "If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive," then the court must "examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [Congress'] intention' to deem it civil." *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

Thus, the first inquiry is whether the 2000 DNA Act as amended is penal. The Seventh Circuit upheld a similar state statute against an *Ex Post Facto* clause challenge, holding that

12

DNA collection statutes have a legitimate, non-penal purpose. *Gilbert v. Peters*, 55 F.3d 237, 238-239 (7th Cir. 1995). Other courts have also upheld similar state statutes against *Ex Post Facto* challenges. *Ewell v. Murray*, 11 F.3d 482, 486 (4th Cir. 1993); *Rise.*, 59 F.3d at 1559; *Shaffer v. Shaffle*, 148 F.3d 1180, 1181 (10th Cir. 1998). The legislative history reveals that the 2000 and 2004 DNA Acts were not enacted to punish convicted felons, but instead to establish a federal DNA database to assist in the identification, arrest, and prosecution of criminals. *See generally* Robin Cheryl Miller, Annotation, *Validity, Construction, and Operation of State DNA Database Statutes*, 76 A.L.R. 5th 239 at § 2 (2000); H.R. Rep. No. 106-900 (I), 2000 WL 142016; 2000 WL 1420163 at 13-14; 146 Cong. Rec. S11647, 2000 WL 178925. The DNA Acts do not, as Hook argues, increase his punishment for the underlying conviction. While the DNA Acts provide for sanctions for non-compliance, those sanctions relate to the defendant's present conduct and not for his past conduct. As such, the 2004 DNA Act does not violate the *Ex Post Facto* clause.

I. **Hook's Bill of Attainder Claim**

Hook argues that the 2004 DNA Act constitutes an impermissible Bill of Attainder. Article I, § 9, cl. 3, of the United States Constitution provides that "[n]o Bill of Attainder ... shall be passed" by Congress. A statute constitutes a bill of attainder if it (1) "single(s) out an identifiable group"; (2) "inflict(s) punishment;" and (3) "dispense(s) with a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 846-7, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984).

13

To determine whether a challenged act "inflict(s) punishment" for bill of attainder purposes, courts are instructed to assess whether (1) the act "falls within the historical meaning of legislative punishment," (2) the act "reasonably can be said to further non-punitive purposes," and (3) the legislative intent reveals a "Congressional intent to punish." *Nixon*, 433 U.S. at 475-478.

As discussed in connection with Hook's *ex post facto* argument, the 2000 and 2004 DNA Acts are non-penal. The DNA Acts promote the non-punitive goals of establishing a federal DNA database, improving the accuracy of the criminal justice system, and deterring recidivism. *See generally* Robin Cheryl Miller, Annotation, *Validity, Construction, and Operation of State DNA Database Statutes*, 76 A.L.R. 5th 239 at § 2 (2000); H.R. Rep. No. 106-900 (I), 2000 WL 142016; 2000 WL 1420163 at 13-14; 146 Cong. Rec. S11647, 2000 WL 178925. While forced blood extraction imposes an obligation on Hook, it is a minimal intrusion that is "closely analogous to the administrative taking of an offender's standard fingerprint or the recordation of an offender's physical characteristics." *Reynard*, 220 F.Supp.2d at 1164. Since the DNA Acts do not inflict punishment, the DNA Acts do not constitute an unconstitutional bill of attainder as applied to Hook.

J.    **Hook's Separation of Powers Claim**

Hook also argues that the DNA Acts violate the Separation of Powers doctrine by requiring the U.S. Probation Office to perform law enforcement duties. Specifically, Hook contends that since the DNA Acts require probation officers to collect DNA samples and submit the samples they obtain to the Federal Bureau of Investigation, the probation officers are improperly performing executive branch functions.

"Within our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Nonetheless, the three branches of government are not required to be "entirely separate and distinct." *Id.* Thus, the court has upheld "statutory provisions that to some degree commingle the functions fo the Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* at 382. For instance, in *Mistretta*, the Supreme Court held that the Federal Sentencing Guidelines do not violate the Separation of Powers doctrine. *Id.* at 372.

The duties delegated to probation officers under the DNA Acts do not appear to pose a danger of encroachment on the executive branch by judicial officers. The duty to collect blood samples from felons on conditional release is consistent with the monitoring, supervision, and reporting duties already assigned to probation officers and approved in *Mistretta*. *Reynard*, 220 F.Supp.2d at 1171 (upholding the 2000 DNA Act against a Separation of Powers). Similarly, the "detain" and "restrain" powers accorded probation officers by the DNA Acts is not appreciably broader than the arrest powers Congress has delegated to probation officers under 18 U.S.C. § 3606. *Id.* While these duties do possess a law enforcement aspect, they nevertheless "reflect the practical necessity of a limited degree of commingling and interdependence among the branches." *United States v. Stegman*, 295 F.Supp.2d 542, 551 (D.Md. 2003). As such, the duties delegated to probation officers under the DNA Acts is not a violation of the Separation of Powers doctrine.

## CONCLUSION

For the reasons discussed above, Hook's verified petition [#2] is denied. Hook is ordered to comply with the U.S. Probation Office's request for a blood sample. Hook has stated that if the court determined that he was subject to DNA testing, he would voluntarily submit a blood sample. In light of this representation, the court denies without prejudice the U.S. Probation Office's request to terminate Hook's supervised release. Hook's motion to quash special report and terminate supervised release [#9] is denied.

Dated: January 20, 2006        Enter: _/s/ Joan H. Lefkow_

                                             JOAN HUMPHREY LEFKOW
                                             United States District Judge